And the first one is number 12-3271, Melber of the United States, Mr. Noonan, and Mr. Rivelas?  Rivelas, okay, thank you. Good morning, Your Honors. My name is Michael Noonan. I represent the appellant, Robert Melber, and I would like to reserve five minutes for rebuttal. Okay, you certainly may. Thank you. When you got the notice in July 29 of 2010, I realize you say, okay, years passed since the incidents of May 1 and June 8 of the prior year. But why not say, hey, this is the first time we really knew of it, and in order to try to fit in with the Egan case, let's just file something under the state law, even if they claim we shouldn't have? Well, I was familiar with the Egan case, and in Egan, they did not file a tort claims notice. No tort claims notice was filed in the Egan case. But the problem with Egan is they said that there was unique circumstances, there was confusion in the law, there was diligence, and in that context, they were going to clarify the law, and that was back in the late 80s. Well, I felt we were diligent in that we were led to believe that the doctors were federal employees and we filed a complete and compliant federal tort claims notice. So from the beginning, we were, I think, diligent. And then when I received this – first of all, we received a letter from George Burns, the regional counsel for the Department of Veterans Affairs, on July 23rd that says – But six days later, he clarified it. Right. Six days later, he clarifies it. At that point, I know, you know, Title 59, that we're 8-9, we're beyond the year. There's no jurisdiction to file or receive. How do you know that you're already beyond the time limit? Because the approval date of the surgeries was May 11th and June 8th of 2009. So you were familiar with that part of New Jersey law. Correct. And you were also then familiar with the part of New Jersey law that indicated that the discovery rule would apply and that you would have more time. It's possible, but it's not definite. We don't know. I had to go with my guess. Wouldn't you at least have to try, though? I would try, but then it would be another risk. But you didn't try. Didn't try. To take advantage of the discovery rule after July 29th. The point is, when you get that surprise notice six days after they told you your claim was perfected under the federal provision, then you're saying, oh, my God. I mean, it's like, okay, what do I do? Well, one of the things you probably need to do – it looks like the contract. When you read the July 29th letter, it looks like the contract is between the New Jersey facility, I guess, for whom these two doctors worked, and the VA. And so did you check and see if these doctors were actually employed then by UMDNJ? Well, the attachment that came with the July 29th letter, JA39 in the appendix, the effective dates of that purported contract are July 1st, 2009 to June 30th, 2009, after the surgeries. The wrong dates. The wrong dates. The wrong dates, number one. And also, they never mention the name of Dr. Bogart or Cohen in this purported contract. He describes it in his July 29th letter as a pertinent aspect of the contract. And to be quite honest with you, Your Honors, this is a unique case because there's no discovery in this case anywhere. This case was on a fast track to federal court, was removed on June 17th of 2011, and there was no discovery. And so everything that the appellee, the defendants, Bogart and Cohen sent us, none of it supports the fact that they were employees of the University of Medicine and Dentistry. It's between July 29th, 2010 and May 11th, 2011 when you filed your complaint. So that's about nine or ten months. What did you do to find out by whom Drs. Bogart and Cohen were employed? Well, on December 1st, 2010, we were told they were not. The surgeons were independent contractors. So after December 1st, 2010, when George Burns sent me the letter that said all the surgeons were independent contractors, I knew that independent contractors... That's their relationship with the VA. Well, we didn't know that. He said they were independent contractors, and I know that... Well, who was Burns with? George Burns is the regional counsel for the Department of Veterans Affairs. Right. So when the counsel for VA says they're independent contractors, they're independent of the VA. That doesn't shed any light as to their relationship with any other entities, does it? Well, when he says they're independent contractors, under Title 59, 1-3, independent... And the case law that we cited, independent contractors are not entitled to a notice of tort claim. So I knew that, and that was the information I received, so we didn't feel that they were entitled to a notice of tort claim. They were independent contractors. Aren't you really asking us at this point in the litigation for Lee to file a late notice under extraordinary circumstances under the State Tort Claims Act, in effect? Your Honor, I'm asking you for the same relief that the Supreme Court in New Jersey gave in Egan v. Boyarsky. Well, really, you're claiming extraordinary circumstances under the Egan, Lowe, and Ventola case, since, in effect, what you're really saying here is the State, the UMD, and the VA really played hide-the-ball with you here. Correct. And if we agree with you that the facts of this case are similar to Egan, Lowe, and Ventola, then you're really saying you have extraordinary circumstances allowing you to file a late notice under the State Tort Claims Act. I think we're on all fours with the Egan v. Boyarsky case. The only problem I have is, as mentioned, the July 29th letter. It feels like you weren't on notice at that time that you were dealing with UMD doctors or, you know, they never identified them as UMD doctors at that point. That's correct. And you weren't on notice at that time that you were dealing with someone that a notice had to be filed. That's correct. They alluded to some relationship. One argument it would appear you would have is that they may not have filed an answer that brought up as an affirmative defense that these two doctors were employed by UMD and Jay. And yet in your March, I guess, 15 letter to us, you make that argument. But I don't see it actually raised in either of your briefs, your opening or your reply. There's a reason for that, Your Honor. Okay. What happened was counsel for Appelli stood up at our argument and represented to the judge that he had filed the answer, that is 183 in the joint appendix, that this answer that has the affirmative defense is in Title 59, that he had filed this in state court. He had filed this in state court. He said on the record to the district court judge, and then he puts it in the appendix. But when I was preparing later on for, you know, I think it was I was preparing for subsequent briefs, I was looking through the appendix, and I noticed when I got to that answer. I was told he'd never filed it. Yeah. But you received a notice of it by mail. You were served with a copy of it. I don't think so. I think the only time we received it was in the motion papers. Well, according to your briefing, there's no evidence in the record that you received it, and certainly the record shows it was never filed in state court. That's correct. All right. And so, you know, I stated, you know, with the case law, it's pretty clear that you can't rely on Title 59 if you don't plead it. So for that reason alone, I think the case should be barred from using it and we should go back to district court. There's nothing, is there anything in this record that shows that you were actually served with a copy of that, even though obviously the record is clear it was never filed? No. We never received it until we received it in the motion papers. Okay. We didn't see anything either. Yeah. The only answer filed in this case is with this court, with the federal court. Yeah. And that, unfortunately for appellee, unfortunately for them, it does not have the affirmative defense. Well, but at some point, certainly when it was in federal court at that point, for the first time you realized you were dealing with UMD doctors, not independent contract, not some independent doctor. Did you know it at that time when it was removed from federal court? Well, they kept telling us that. They kept saying, you know, this general theme that this July 29, 2000 letter from George Burns says they're UMD employees. It's throughout his brief. But in actuality, everything they sent us, all the documents they sent us and sent you, everything is either, you know, it's not the right time, there's no name. Forget the brief. When is the first time the record reflects that they indicated to you that you're dealing with UMD of New Jersey and not with VA doctors or whatever? Well, I think when they stood up, you know, when they started making arguments that they were, you know, they were here to defend. They told the U.S. District Court Judge that they were there hired to defend the doctors, so on and so forth. We didn't receive any documents where there's an actual contract with their names on it. Why don't we hear from Mr. Rivelas? Thank you. Good morning, Your Honors. May it please the Court. Gary Rivelas on behalf of Appellees Neelof, Shibagat, and Amir Cohen, MD. Let me address the waiver argument. I have here a copy of my filed answer from the Superior Court of New Jersey that was copied on him, and it bears a filing stamp. What is that, in the appendix? It was not in the appendix, Your Honor, because they attached the copy that I got this back after the case had been removed. They attached the copy they had received in the mail from me before it was filed, but it was stamped, filed and received in the Superior Court. I don't know why the docket doesn't show that. What is the file date that reflects? June 14th, which is three days before removal, Your Honor. And then also, before I knew the case had been removed to federal court, I filed an identical motion in the Law Division to dismiss, for lack of a tort claims notice, also bearing a filing date of June 24th. Now, the case had been removed June 17th, but I filed a motion to dismiss under the Tort Claims Act on June 24th. I then, through oversight, the same day I filed my motion to dismiss in federal court, filed an answer, and through oversight did not include affirmative defenses. But attached to my original motion was the answer that had been filed in the Law Division case, although not stamped, filed, as well as he had gotten notice of my initial motion in the Law Division that never went through because the case had been removed by the U.S. Attorney. This was in 2011, right? This was in 2011, Your Honor, yes. When his complaint was filed on May 11th, I filed my initial answer June 14th. It was stamped, filed, and received by the Superior Court. I don't know why the docket doesn't show it being filed, but it was filed before it was removed, and I have a file-stamped copy. I didn't respond to his letter because there was no provision for a Sir, Sir reply. But what you filed on June 14th, that answer, did it have the affirmative defense that these employees were not with the VA, but rather with UMDNJ? It did, Your Honor, and it's identical to the one that's included in the appendix, which has all of the Tort Cleanse Act defenses in it. But that's the first time he indicated he knew that there was a separate defense that these were UMD doctors and not VA doctors. He was aware before the case was removed when he was copied on my answer. Yes, Your Honor. What date was that? How many days before the removal was he notified? Three days before the removal. Three days before the removal it was filed. That's still beyond the period of time he could have filed the period from which he could file a tort claims claim. I disagree, Your Honor. Well, if it wasn't actually arose, let's say when Dr. Harris performed his operation around August 09, at that time, that has to be the first time he knew that there was malpractice because there was something left in the client's eye. The time had already run for filing a State Tort Claim Act. I disagree. Under the three cases, Egan, Ventola, and Lowe, they talk about the discovery rule being applied. And those cases were decided in 1999 and 2000, respectively, more than 12 and 13 years before now, 10, 11 years, 12 years before these motions came. And those cases said that there is equitable tolling until there is knowledge. And my position in this case is I can't prove knowledge before July 29th. But as of July 29th, there is an indicia of a relationship between UMDNJ and these positions. And as of that date, if you start the clock then, he's within the year at that point and never files, even to this day, a motion to permit a late notice of tort claim under any circumstance. Well, he's in court. I believe, really, he can't file a claim at this time. But that's the problem. The July letter did not advise him that he was dealing with UMD doctors. It did advise him. Well, it advised him that they were affiliated with the VA subcontractor, UMDNJ. Well, that's a little more vague than that. He says... Independent contractors.  I have copied the pertinent aspect of the contract for the services of Drs. Pagod and Cohen, as well as the requirement that the contractor, UMDNJ, provide malpractice insurance coverage. And what was attached was what appeared to be an out-of-date contract between the VA and UMDNJ. But what else does that letter say? It invites him, if he would like a full copy of the contract, to then request it from this particular address. In the Bronx, right. So, what do we have? We have some indicia that UMDNJ is involved and an invitation for him to investigate that. And all of the case law under the Tort Claims Act talks about, and the statute itself uses the words, diligence in investigation. And there's no diligence from that point on. And we have in the record from the argument that's attached in the appendix, Judge Salas questioning Mr. Noonan about September and October letters from the VA that were not included in the appendix. But it's in the oral argument that asked for more information about the claim being asserted against the VA. And there's no response from counsel. Yeah, but as a practical matter, as a practicing attorney, how could he possibly know that these were UMD doctors until the answer was filed as a separate defense? This other indication here, there's no indication that you're dealing with a state doctor here. It says UMDNJ, which is after 1999, no one can dispute that the public is on notice, that UMDNJ is a New Jersey public entity. It says that they are somehow affiliated and invites him to do some investigation. And by the way, if you do a Google search today on either of these doctors, their UMDNJ affiliation comes up as the first line item. But that's true. But as I recall, after Egan, doctors were supposed to wear some type of identification that they were UMDNJ. And that apparently did not happen in this case. Well, you have an affidavit saying that. And I've conferred with the doctors and said they must when they walk into the VA wear their badge. Well, I take a lot of umbrage with your statement that they usually do this and so forth. You refer to, according to FRAC, when you make a statement of fact like that, you're supposed to refer to the record. There's no record evidence that they had any logos or identification that they were UMD doctors. And Egan Lowe and Ventura required them to not only have that logo on them, but to actually notify the patient that they are UMD doctors. I appreciate what that requirement is, Your Honor. But the questions that were sent by this court to me asked for information that was beyond the record. And so I provided the information that was available to me that was beyond the record below. There had been no requests for discovery on this issue. My motion was filed July 15th. Argument was heard in March. Nearly eight months later, there was no request for discovery by appellant in those eight months concerning my affirmative offenses and my two motions to dismiss for lack of tort claims notice. Well, yeah, but as the record stands now before us, as you argue here, the only thing that we have before us is his affidavit in the record stating that none of these doctors ever had any logos or identification. Certainly he wasn't given anything physically saying that they were UMD doctors. I agree with that. And in addition, this is pathetic. You're dealing with a guy that's half blind or something. He can't see anyway. He had a macula on retinal detachment. Yeah, and so as this record stands, he was never notified as required by New Jersey Supreme Court precedent. I will concede that there was no written notification to him. I am told that in order to even get in the VA, they must wear their UMDNJ badge. Whether it was hidden in a coat, I can't tell you, Your Honor, I wasn't there. What I can tell you is they must wear their UMDNJ insignia to even get into the VA. Well, there's nothing in this record that anyone has sworn to that they, when they saw him and dealt with him, that they had logos and identification and certainly that they didn't physically notify him that they are UMD doctors. And there's likewise nothing in this record that shows that UMDNJ, the state of New Jersey, or Drs. Cohen and Begat were ever notified as a precursor to suit that there was a potential claim against them. And this is a case about sovereign immunity. Are you arguing that the victim or the, well, let's call him the victim. I mean, whether there was malpractice or not, I don't know. But are you arguing that the victim was on notice that they worked for UMDNJ, or is your argument based on counsel's professional obligation to do something to ascertain by whom they're employed? Your Honor, all I know is that on July 29th, there was a letter sent to counsel. I can make no representation about what happened prior to that date or the state of Mr. Melberg's knowledge. What I can tell you is that on July 29th, there was an indication that insurance coverage was provided by UMDNJ for these contract physicians. Well, no, it didn't quite say that. It said they were contract employees. It didn't say that UMD has insurance for these doctors. I will read it. It says, were contract physicians and not employees of the agency, meaning the VA. I have copied the pertinent aspect of the contract for the service of Drs. Begat and Cohen, as well as the requirement that the contractor, UMDNJ, provide malpractice insurance coverage. So it does say that they were required to provide insurance coverage for them through UMDNJ. My position is if this doesn't satisfy the written notice requirement that there's some affiliation with a state entity, there's nothing that ever will. So just to take a step back here. Yes, sir. I mean, essentially what we have here is a person has two operations. And after the second operation, which was for a cataract, the first was for a detached retina. Yes, sir. After June 8th, the guy becomes blind in his right eye. Perhaps that's his dominant eye. I don't know. And obviously somebody's checking into this. There is a Federal Tort Claims Act notice. Yes, sir. They're told it's perfected. Less than a week later, they're told, well, in fact, he doesn't work for us. And there's some indication he may work for a state agency. Less than a year later, there is a complaint filed. So in effect, what you're saying is there's a technicality. There's also a notice required under state law. It wasn't filed here. And because of that technicality, this person is denied or cannot have his day in court with regard to these two particular doctors. I understand there's three others. Is that right? Still continuing? Yes. There were five sued altogether? Correct, Your Honor. It stayed in the district court pending this appeal. I believe so. But I will say that they're not denied their day in court because under the apparent authority doctrine, if he can establish that the VA held them out as his employees, he still gets to recover against the VA. So he's not denied his day in court even against these particular doctors. It would be kind of hard to recover against the VA and let it to July 29th. I see what you're saying. Under apparent authority, under the Cordero cases and that line of cases. Got you. And also, if you look at the Supreme Court's most recent decision, which I attach as a 28-J letter to this court, DD versus UMDNJ, in that case it was five months after the alleged injury and the court essentially went into great detail about how extraordinary circumstances were not met because of the lack of diligence by counsel in a five-month delay. Here we have an invitation to counsel to explore the relationship and nothing is done, no response to subsequent VA letters, no Google search, no Internet search, no letters, no copy of the federal notice to the state. When did you get the federal notice that was actually filed? When I was retained in this case, I called up the U.S. Attorney's Office. When I found out it had been removed, I called up the U.S. I called up regional counsel who said, we've already retained counsel called the U.S. Attorney's Office. I called the U.S. Attorney's Office and they provided it to me. Okay. Well, DD is a different, it's a medical malpractice case and where it's obvious the lawyer should have been on notice well before he filed. That's the facts that are somewhat different from what we have here. I agree it's not on all fours, but the way they interpret the Tort Claims Act, demolishing substantial compliance and reiterating that the sovereign immunity is in favor of limitations of lawsuits, not cases being heard on the merits. The exact language of that case says that it is in favor of limitations of lawsuits for recovery against the state. Well, you do agree though, Howard, that the standard still is whether there's extraordinary circumstances which would allow for a late filing of a notice at this point. That is absolutely the standard, and under DD, lack of diligence and investigation does not qualify as an extraordinary circumstance. No further questions? No further questions. Thank you so much. Thank you. Mr. Newton. First of all, I was surprised, as maybe this Court was, to see the missing filed answer the first time we saw it was today, the day of oral argument before the Third Circuit Court of Appeals. What does that mean? I mean, if it was filed, it was filed. Regardless of when we first saw it, right? You could have seen it by going to the docket and looking it up, right? Right, but it's not in the docket, and I have an affidavit, Exhibit B, in my response to the Court's four questions, and my paralegal called. When I saw that there was no stamp on that, I had my paralegal call. The clerk at the Essex County Courthouse said it was never filed. I have an affidavit, Exhibit B. Why doesn't somebody check afterwards? Because if you filed on May 11, 2011, and on June 14, an answer was filed that contained this, it either is or it isn't in the state court records, period. And we have the docket that we submitted to the Court. What I would suggest is if somebody would just let us know afterwards, it either is or it isn't. This isn't something you can argue about. More to the point, Mr. Noonan, let me ask you. I'll say the main position of the appellee here is that the July 29th letter should have put anyone on notice that they were dealing with a VA or on notice sufficient that you were on notice that you're dealing probably with a VA or someone like that. What do you have to say about the July 29th letter? Well, Your Honor, I could have filed a prophylactic notice. You know, I've done that in the past. But in this particular case, I was beyond a year. And there's no jurisdiction to file or receive. Even on July 29th? Right. That's why it's the statute of limitations. How can you say that in light of all the case law to the contrary? Because the essence of your argument seems to be that you were unfamiliar with the case law that indicated that you weren't untimely after July 29th. If you filed after July 29th, you're in really good shape today. Exactly. Well, apparently. In other words, your position is July 29th, even if you did know the VA was there, you were out of time anyway. The year had passed. Yes. But you would have been arguing extraordinary circumstances, which are the same argument you're making now to file at this period of time. Is that correct? I'm making the same argument as Egan and Boyarsky. Why would you argue extraordinary circumstances, which is a much higher mountain to climb, instead of arguing discovery rule? The case law is wide open for you to make almost a slam-dunk discovery rule claim on July 30th, July 31st, any day thereafter. With the benefit of hindsight, isn't it clear that that was the proper thing to do? Well, the Lopez cases talk about when the malpractice accrued, and I was of the opinion that it accrued at the time of the surgery. But the point is, it cannot, literally cannot hurt you to have filed the notice, subsequent state notice after July 29th, and it might help you. In fact, it quite likely could have helped you. Right. Were you on notice on July 29th that the VA was involved, the UMD was involved here? I was on notice that the University of Medicine and Dentistry made, they alluded to some relationship, but then I was told that there were independent contractors later. But the contract that they sent me on July 29th, 2010, was a contract that was irrelevant. It was beyond the date that the surgeries took place, and it didn't even name Dr. Pagott, Dr. Cohen, or any other physician. It was useless, a useless document. But it does put you on notice that you need to do some further inquiry, doesn't it? Well, you know, I talked about that with the district court judge as to what, and the district court judge was unable to answer our inquiry, and that is, what is the level of notice? You know, I mean, if you hint that there might be an independent contractor. The point is it ain't the VA, so therefore it has to be someone else. And if you had to take a guess and place a bet on it, it would be UMD and Jay, but you need to check that out. I don't disagree with you, Your Honor. Okay. And I would like, you know, he mentioned his slip opinion that he sent under 28J. I just wanted to comment on that briefly. Here in the slip opinion, they knew, the plaintiff knew immediately that her private health information was disclosed. This is not 17 months like Boyarsky or 13 months like our case. We found out over a year later, and there's some very good language for the appellant at page 31 of the slip opinion, which I'd like to read. After commenting on Egan v. Boyarsky and Vitola and Kraus, the court says, in each of these cases, there was evidence that plaintiffs were thwarted in their efforts to comply with the 90-day timeframe because, through no fault of their own or of counsel, correct identification of the defendant as a public entity or a public employee was not possible. In those circumstances, application of the statutory test led each court to conclude that the plaintiffs were entitled to file a late notice of claim. However, this court and the appellate division have reached the opposite conclusion, finding claims barred when the identity of the correct defendant was readily discoverable within the 90 days that the statute allows but timely notice was not filed. So it seems to me that the court takes a different position, a more liberal position. And, you know, as the court said in Lowe v. Zardana, Title 59 should not be a trap for the unwary. I mean, we were totally misled from the beginning. You were misled or misunderstood or whatever until July 29, 2010. It wasn't the VA. Therefore, it had to be somebody else. And you need to go and do some checking. It looks like it's probably UMDNJ, but you're not sure. And the contract, as you say, doesn't help you. It's attached. But who did you think it was after July 29? I didn't know. I mean, there was an idea that it might be the University of Medicine and Dentistry, but then I was told they were independent contractors a couple of months later. And there's no need to file a notice. All those things do, there are question marks that have to be, you need to find the facts. They either are with UMDNJ or they're not, once again. Well, the final thing I will say is this, Judge, that had I been told, had my client been told the way he was supposed to be told by the requirement notice of Egan and Boyarsky, we wouldn't be here today. I wouldn't have the privilege to appear before this court. And they should not be rewarded by the fact that they held us out for over a year. And my client shouldn't be punished because I didn't file a prophylactic tort claim notice. And that's all I have to say. Thank you, Counsel. Thank you. We'll take the matter under advisement. Appreciate you coming here today. Thank you, Officer. You're welcome.